UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| ALICIA JOHNSON, | ) | |
|---|---|---|
| *Plaintiff*, | ) | Case No. 2:21-cv-50 |
| | ) | |
| v. | ) | Judge Travis R. McDonough |
| | ) | |
| | ) | Magistrate Judge Cynthia R. Wyrick |
| BALLAD HEALTH and RELIANCE STANDARD LIFE INSURANCE CO., | ) ) ) | |
| *Defendants*. | ) | |

# MEMORANDUM OPINION

Plaintiff Alicia Johnson has brought this action against Defendants Ballad Health ("Ballad") and Reliance Standard Insurance Co. ("Reliance") for wrongful denial of long-term disability benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). (*See* Doc. 1.) Pursuant to the Court's scheduling order in this case, all parties were deemed to have moved for judgment in their favor based on the administrative record, (Doc. 15, at 2), and the parties have submitted briefs in support of their respective arguments (Docs. 25, 26, 29). For the following reasons, the Court will: (1) **GRANT** Reliance's motion for judgment on the administrative record; (2) **DENY** Ballad's motion for judgment on the administrative record; and (3) **GRANT IN PART** Johnson's motion for judgment on the administrative record.

## I. BACKGROUND

Johnson previously worked for Ballad as a physical therapist. (*See* Doc. 22-6, at 34.) As part of her employment, Johnson was eligible for employer-sponsored long-term disability

benefits pursuant to a plan administered by Reliance (the "Plan" or "Policy"). (Doc. 22-1, at 1–40.) The parties do not dispute that Johnson was a "Class 1" employee as that term is defined by the Plan. (*See* Doc. 25, at 4; Doc. 26, at 5; Doc. 29, at 2, 7.) Under the Plan, "Class 1 & 2 employees" were eligible for the following monthly long-term disability benefits:

> **MONTHLY BENEFIT:** The Monthly Benefit is an amount equal to:
>
> **CLASS 1 & 2:**
>
> > **CORE:** 40% of Covered Monthly Earnings, payable in accordance with the section entitled Benefit Amount.
> > **BUY-UP:** 60% of Covered Monthly Earnings, payable in accordance with the section entitled Benefit Amount.

(Doc. 22-1, at 9.)[1] To calculate the benefit amount, the Plan specifies:

> **BENEFIT AMOUNT:** To figure the benefit amount payable:
> (1) multiply an Insured's Covered Monthly Earnings by the benefit percentage(s), as shown on the Schedule of Benefits page;
> (2) take the lesser of the amount:
>   (a) of step (1) above; or
>   (b) the Maximum Monthly Benefit, as shown on the Schedule of Benefits page; and
> (3) subtract Other Income Benefits, as shown below, from step (2) above.

(*Id.* at 21.) Regarding "contributions", the Plan provides:

> **CONTRIBUTIONS:** Insured:
>
> **CLASS 1 & 2:**
>
> > **CORE: 0%**
> >
> > Premium contributions will not be included in the Insured's gross income.
> >
> > For purposes of filing the Insured's Federal Income Tax Return, this means that under the law as of the date this Policy was issued, the Insured's Monthly Benefit might be treated as taxable. It is recommended that the Insured contact his/her personal tax advisor.
> >
> > **BUY-UP: 100%**
> >
> > Contributions for the Insured are being made on a pre-tax basis. For purposes of filing the Insured's Federal Income Tax Return, this means that under the law as of the date this Policy was issued, the Insured's Monthly Benefit might be treated as taxable. It is recommended that the Insured contact his/her personal tax advisor.

---

[1] The Plan defines "covered monthly earnings" as "the insured's monthly salary received from [Ballad] on the first of the month just before the date of Total Disability. Covered Monthly Earnings does not include commissions, overtime pay, bonuses, incentive pay or any other special compensation not received as Covered Monthly Earnings." (Doc. 22-1, at 12.)

(*Id*. at 11.)  The term "buy-up" is not defined by the Plan.  (*See id*., at 1–40.)  Finally, the Plan provides that "[t]he entire contract between [Ballad] and [Reliance] is this Policy, [Ballad's] application . . . and any attached amendments."  (*Id*. at 16.)

Johnson selected the "buy-up" option for long-term disability benefits.  (*See* Doc. 22-8, at 35.)  In May 2019, Johnson received an "Annual Enrollment Confirmation Summary."  (*Id*. at 49.)  Johnson represents that Ballad Health, not Reliance, provided this summary.  (Doc. 25, at 2.)  The summary stated that Johnson elected for "LONG TERM DISABILITY OPT2" at "100% of salary" and noted that her cost of coverage was $22.58 and the company cost was $3.39.  (Doc. 22-8, at 49.)  Additionally, the administrative record includes a "Team member benefits guide" for fiscal year 2020. (*Id*. at 40.)  In describing long-term disability benefits, the guide states that Ballad "pays the full cost of Option 1"—40% of the employee's basic monthly earnings up to $5,000/month—and that an employee "can elect Option 2 for an additional cost and higher coverage"—60% of the employee's basic monthly earnings up to $6,000/month.  (*Id*. at 41.)

Johnson filed for long-term disability benefits on January 14, 2020, claiming disability status beginning on September 16, 2019, based on her loss of vision from Stargardt's Disease.  (*See* Doc. 22-6, at 39–41; Doc. 22-7, at 7.)  Reliance determined that Johnson qualified for long-term disability benefits and that Johnson's gross monthly benefit was $4,891.78, which equals sixty percent of her covered monthly earnings.  (Doc. 22-8 at 47–48.)

Johnson appealed the disability amount, arguing that she was entitled to payments totaling one-hundred percent of her covered monthly earnings under the terms of the Plan— CORE coverage at forty percent of covered monthly earnings provided by Ballard at no cost to her plus her election to purchase "buy-up" coverage of sixty percent covered monthly earnings.

(*Id*. at 37–51.) On September 25, 2020, Reliance denied Johnson's appeal, finding that she was only entitled to sixty percent of her covered monthly earnings under the terms of the Plan. (Doc. 22-6, at 21–26.) In denying her appeal, Reliance reasoned:

> The Policy stipulates that full-time benefit eligible non-union employees scheduled to work a minimum of 72 hours per pay period for Ballad Health (the "Policyholder") have CORE coverage under the terms of the Policy, as paid for by the Policyholder, to have a *Monthly Benefit* equal to forty percent (40%) of their *Covered Monthly Earnings*. However the Policy allows said employees to elect and contribute one hundred percent (100%) of the premiums for additional BUY-UP coverage. If selected, the *Monthly Benefit* is instead equal to sixty percent (60%) of the employee's *Covered Monthly Earnings*. In other words, full-time benefit eligible . . . employees . . . for the Policyholder can choose to buy-up (increase the amount of their LTD insurance coverage) to sixty percent (60%) of their *Covered Monthly Earnings* from forty (40%). The Policy explicitly does not provide for any *Monthly Benefit*, regardless of the class of employee(s), of one hundred percent (100%) of said employee's *Covered Monthly Earnings*. It is instead the case that the Policyholder contributes or pays the premiums for coverage up to forty percent (40%), and if the additional coverage is selected by an employee, they contribute or pay of the remaining premiums to cover the sixty percent (60%) threshold (the additional twenty percent (20%)).

(*Id*. at 23.)

Johnson initiated the present action on March 12, 2021. (Doc. 1.) In her complaint, Johnson asserts claims under ERISA against Reliance and Ballad.[2] (*See id*.) Pursuant to the Court's scheduling order, all parties were deemed to have moved for judgment in their respective favor based on the administrative record (Doc. 15, at 2), and the parties have submitted briefs in support of their respective arguments (Docs. 25, 26, 29). The parties' motions for judgment on the administrative record are now ripe for the Court's review.

---

[2] Johnson's complaint states that she brought this action "for the purpose of obtaining relief from Defendants' refusal to pay long term disability ("LTD") benefits due under an employee benefits plan under the Employee Retirement Security Act of 1974." (Doc. 1, at 1.) Although not specified in the complaint, Johnson's brief in support of her motion for judgment on the administrative record indicates that she is asserting claims against Reliance for wrongful denial of benefits and against Ballad for breach of fiduciary duty. (Doc. 25, at 4–11.)

4

## II. JOHNSON'S CLAIM FOR WRONGFUL DENIAL OF BENEFITS

Under ERISA, when a policy contains a clear and express grant of discretion to the administrator of the policy, the court will not overturn the administrator's decision unless that decision is arbitrary and capricious. *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The policy Reliance issued contains such a grant of discretion, and the parties agree that the arbitrary-and-capricious standard applies to this case. (Doc. 22-1, at 21; Doc. 25, at 5; Doc. 26, at 2; Doc. 29, at 4–5.)

In interpreting a plan under the arbitrary-and-capricious standard, "the administrator must adhere to the plain meaning of [the plan's] language as it would be construed by an ordinary person." *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004). Review under the arbitrary-and-capricious standard is extremely deferential, and the administrator's decision must be upheld if it results from a deliberate, principled reasoning process. *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064–65 (6th Cir. 2014). Alternatively stated, the Court will uphold a benefits determination if it is rational in light of the plan's provisions, and the Court "must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants." *Morgan*, 385 F. 3d at 992.

The Court must first determine whether Reliance acted arbitrarily and capriciously in deciding that Johnson is entitled long-term disability benefits calculated based on sixty percent of her covered monthly earnings under the terms of the Plan. The Plan's long-term disability monthly benefit provision for Class 1 employees is not a model of clarity, because it does not define "buy-up." One reasonable interpretation, as argued by Reliance, is that an employee is "buying up," by paying additional premiums, from the core long-term disability benefit of forty

percent of covered monthly earnings to a long-term disability benefit of sixty percent of covered monthly earnings. Conversely, however, there is nothing in the monthly-benefit provision that conclusively establishes that the "core" amount of forty percent and the "buy-up" amount of sixty percent should not be aggregated for a total of one-hundred percent of covered monthly earnings. As a result, it is not entirely unreasonable for an employee to believe they are "buying up" from forty percent of covered monthly earnings to an aggregate total of one-hundred percent of covered monthly earnings.

Nonetheless, Reliance did not act arbitrarily and capriciously in deciding that Johnson is entitled long-term disability benefits calculated based on sixty percent of her covered monthly earnings. First, although not central to resolution of other cases, other courts have suggested that "buy-up" provisions provide the employee an opportunity to choose between stated percentages, not to aggregate. *See, e.g.*, *Troiano v. Aetna Life Ins. Co.*, 844 F.3d 35, 39 (1st Cir. 2016) (explaining that, under the terms of the plan, "participants can choose between one of two benefit levels: the 'base level' of 50% of predisability earnings or the 'buy-up' level of 60% predisability earnings," with the employer paying the premiums for 50% coverage and participants who chose the buy-up level paying the premium "for the additional 10% coverage"); *Gustafson-Feis v. Reliance Standard Life Ins. Co.*, 535 F. Supp. 3d 1076, 1079 (W.D. Wash. 2021) (noting that the employer "made available a 'Core' long-term disability benefit which paid 60% of an employee's covered monthly earnings and a "Buy-up' long-term benefit which paid 70%"); *Landry v. Metro. Life Ins. Co.*, 19 Civ. 3385, 2021 WL 848455, at *2 (S.D.N.Y. Mar. 5, 2021) (noting that, under the plan, a disabled employee who participate s in the "Core Plan" is entitled to receive 50% of predisability earnings and that an employee who participates in the "Buy Up Plan" is entitled to receive 60% of predisability earnings); *Mahan v. Unum Life Ins.*

*Co.*, Case No. 13-cv-04803-VC, 2015 WL 3901883, at *1 (N.D. Cal. June 24, 2015) (noting that "[b]efore [the employee] bought up her coverage entitled [her] to receive 40% of her gross monthly income if she became disabled" and the "buy-up entitled her to receive 60% of her gross monthly income while disabled"). Second, in ERISA cases evaluated under an arbitrary-and-capricious standard, ambiguities are not necessarily construed against the party that drafted the plan. *See Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 269 (6th Cir. 2018). Accordingly, although Johnson's interpretation of the Plan may be rational, Reliance's interpretation is, at a minimum, equally rational. As a result, Reliance's determination that Johnson is entitled to long-term disability benefits calculated based on sixty percent of her covered monthly earnings is not arbitrary and capricious. Accordingly, the Court will **GRANT** Reliance's motion for judgment on the administrative record on Johnson's claim for wrongful denial of benefits.

### III. JOHNSON'S CLAIM FOR BREACH OF FIDUCIARY DUTY

"ERISA sets forth fiduciary and statutory duties that the employer . . . must follow," including providing a summary of plan benefits to employees. *Sitso v. Int'l Grp.*, 604 F. App'x 494, 497 (6th Cir. 2015). The summary of plan benefits "shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." *Id*. (quoting 29 U.S.C. § 1022(a)). Consistent with this requirement, "Congress ensured that employers . . . who manage welfare benefits programs for employees and beneficiaries act with high fiduciary duty," including a duty to "communicate fully and accurately with plan participants and beneficiaries about the provisions of the plan." *Id*. "The summary plan description is therefore a fiduciary communication to plan participants and

7
Case 2:21-cv-00050-TRM-CRW   Document 31   Filed 01/24/22   Page 7 of 10   PageID #: 565

selecting the information to convey through it is a fiduciary activity." *Id*. at 498. An employer who furnishes a summary plan description "that is misleading as to benefits it intend[s] to provide" breaches fiduciary duties owed to participants and beneficiaries, regardless of whether the statements were made intentionally or negligently." *Id*. at 499. "Equitable claims" under ERISA, "such as breach of fiduciary duty, are addressed in the first instance in the district court under a normal standard of review, not the highly deferential standard of arbitrary and capricious review." *Id*. at 498.

In determining whether Ballad breached fiduciary duties owed to Johnson, *Sitso* is instructive. In *Sitso*, a plan summary stated:

> The predisability earnings on which your [long-term disability] replacement income is based are *indexed*—that is, *increased annually* by a percentage. After you have received LTD benefits of [sic] 12 months, *your predisability earnings are increased by 7%*. If you continue receiving LTD benefits, your predisability earnings for purposes of the plan are *increased 7% annually* on the anniversary of your previous increase.

*Id*. at 499. A disabled employee asserted a claim under ERISA for breach of fiduciary duty against his employer after the claims administrator rejected his request to increase his monthly benefits based on this language. In holding that the employer breached its fiduciary duty owed to the employee, the Sixth Circuit explained that, based on the plan description, the employee "reasonably assumed that the adjustment to predisability earnings, indexed or otherwise, by 7% annually necessarily increases his monthly benefit by the same amount," and "[t]here is no limiting or qualifying language, nor does the language refer to other sections of the summary regarding 'work incentive' or 'working while disabled' on which [the employer] relies to rationalize its refusal to pay the 7% annual increase." *Id*. As a result, the Sixth Circuit concluded that "the language used would obviously lead a beneficiary like plaintiff reasonably to

8

expect that he would receive a 7% cost-of-living increase if he was unable to return to work due to his disability." *Id*.

As in *Sitso*, the plan description in this case included language that misled Johnson into reasonably believing that selecting buy-up coverage she would be entitled to long-term disability benefits calculated based on 100% of her covered monthly earnings. The Team member benefit guide states that Ballad "pays the full cost of Option 1"—forty percent of your basic monthly earnings up to $5,000/month—and that an employee "can elect Option 2 for an additional cost and higher coverage"—sixty percent of your basic monthly earnings up to $6,000/month. (Doc. 22-8, at 41.) The guide, however, is silent as to whether Option 2 is in addition to the forty percent Ballad-funded benefit in Option 1 or whether it is an entirely separate employee-funded benefit that simply sets long-term disability benefits at sixty percent of monthly earnings. (*Id*.) Given the unclear language in the guide, Johnson reasonably believed that, by selecting Option 2's "additional coverage," she was purchasing long-term disability benefits that were in addition to the forty-percent benefit paid for by Ballad. The reasonableness of Johnson's interpretation is further supported by the 2019 Confirmation Summary, which states that Johnson elected for "LONG TERM DISABILITY OPT2" at "100% of salary."[3] (*Id*. at 35.) Ballad's plan description is not sufficiently accurate and comprehensive to reasonably apprise participants of their long-term disability benefit options. As a result, the plan description is misleading,

---

[3] Ballad argues that this notation "does not mean that the participant's benefit payment is 100% of her monthly earnings . . . this notation refers to the calculation of a class participant's premium payment for the LTD coverage." (Doc. 29, at 8.) Even if accurate, however, that explanation is not provided anywhere in the confirmation summary. Without such an explanation in the team member benefit guide or in the confirmation summary, it is not unreasonable for Johnson to have believed that, by selecting the buy-up option, she was purchasing long-term disability benefits that would be calculated based on 100% of her covered monthly earnings.

regardless of whether Ballad's representations were made intentionally or negligently. Accordingly, the Court will **GRANT** Johnson's motion for judgment to the extent she argues that Ballad breached fiduciary duties owed to her under ERISA and will **DENY** Ballad's motion for judgment.

IV. **CONCLUSION**

For the reasons stated herein, Reliance's motion for judgment on the administrative record is **GRANTED**. Johnson's motion for judgment is **GRANTED** to the extent she argues that Ballad breached fiduciary duties owed to her under ERISA on the administrative record but **DENIED** as to her claim for wrongful denial of benefits. Ballad's motion for judgment is **DENIED** to the extent it argues that it did not breach fiduciary duties owed to Johnson. The Court will enter judgment directing Ballad to pay Johnson long-term disability benefits calculated based on 100% of covered monthly earnings from March 14, 2020, to the date of this order.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

　　　　　　　　　　　　　　　　　　　／s／ *Travis R. McDonough*
　　　　　　　　　　　　　　　　　　　**TRAVIS R. MCDONOUGH**
　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**